IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| NANCY DELIMA, an individual, | ) | Civil No. 06-328-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| HOME DEPOT U.S.A., INC., | ) | |
| dba The Home Depot, | ) | |
| | ) | |
| Defendant. | ) | |

Craig A. Crispin
Patty T. Rissberger
500 Plaza West
9600 S.W. Oak Street
Portland, OR 97223
        Attorneys for Plaintiff

Paul M. Ostroff
Leah C. Lively
Eric D. Wilson
Lane Powell PC
601 SW 2nd Avenue, Suite 2100
Portland, OR 97204-3158

D. Michael Reilly
Lane Powell PC
1420 5th Avenue, Suite 4100
Seattle, WA 98101-2338
        Attorneys for Defendant

FINDINGS AND RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Plaintiff Nancy Delima brings this employment related action against defendant Home Depot U.S.A., Inc., dba the Home Depot (Home Depot). Defendant Home Depot moves for summary judgment, and both parties move to strike certain material related to that motion. Defendant's motion for summary judgment should be granted in part and denied in part as set out below. Plaintiff's motion to strike is granted, and defendant's motion to strike is granted in part and denied in part as discussed below.

## FACTUAL BACKGROUND

On August 25, 2001, defendant Home Depot hired plaintiff Delima to work as a night freight associate at its store in Troutdale, Oregon. In that position, plaintiff was paid $10.00 per hour and worked on a team that received freight, stocked shelves, and prepared the store to do business on the following day.

During her first week on the job, plaintiff received a "new employee" orientation package which included defendant Home Depot's policy prohibiting harassment and discrimination, and instructions to report inappropriate conduct. Plaintiff also received training on Home Depot's safety policies, and was told that she would be warned or terminated if she violated those policies. The policies included a "banner barricade" policy requiring employees to use barricades to block customers or employees from entering aisles where pallets of merchandise are being placed overhead, and a policy

prohibiting the use of a "rabbit button" that increases the speed of certain equipment.

Home Depot's "Code of Conduct" sets out guidelines for disciplining employees for safety violations, and states that managers who fail to enforce its provisions may be terminated. Plaintiff knew that supervisors could be held responsible for safety violations committed by associates.

Rick Baird worked as the Troutdale Home Depot Human Resources Manager (HR Manager) from August, 2002, until April, 2004. In that position, Baird was responsible for setting the pay rate for new employees at the Troutdale store. Pay rates were set within ranges for various positions. According to his deposition testimony, in setting an employee's pay, Baird considered the new employee's existing skills, training, and experience, prior pay history, the pay of existing employees who held the same position, the rate of pay requested by the new employee, and the urgency of filling the position.

In January, 2002, Home Depot adopted written Pay Administration Guidelines concerning wage policies and practices. Home Depot determines pay increases based upon written performance reviews prepared by an employee's supervisor. The reviews include narrative evaluations and rate "overall performance" on a scale ranging from "outstanding" to "improvement required"; rate "leadership" from "exemplary" to "deficient"; and rate "potential" from "high" to "placement issue." Employees receive two written

performance evaluations a year, and are considered for pay raises every February, based upon those reviews.

When Home Depot employees transfer from one store to another in Oregon, they are generally paid at the same rate as they earned at the store from which they transferred.

When a Home Depot employee is promoted, the new wage rate is based upon the employee's current pay, job experience, skill and knowledge, and documented performance. Pay increases for promotions generally range from 6% to 12%.[1]

Before she began working for Home Depot, plaintiff worked for Hollywood Video from 1990 until 1994. She earned $9.23 per hour in that position. She next worked for Target as a stocker for 13 months beginning in August, 1995. Plaintiff earned $6.75 per hour in that position. After that, plaintiff did not work outside the home until she was hired by Home Depot in August, 2001.

When she filled out an application to work for Home Depot, plaintiff did not indicate what rate of pay she desired, because she intended to negotiate her starting wage. Plaintiff was told that the night freight position she accepted would require her to operate "heavy" equipment[2], and that the starting rate of pay would be around $10 per hour. Plaintiff had not operated heavy equipment

---

[1]Plaintiff asserts that Baird did not follow Home Depot policy when he set her pay rate after she was promoted to a supervisor position.

[2]Though Home Depot characterizes the equipment as "heavy," it is not "heavy equipment" as that term is generally used in the context of construction and manufacturing.

FINDINGS AND RECOMMENDATION - 4

before, and was trained and licensed to operate this equipment
within the first week of her employment.

Plaintiff received a generally positive performance review on
October 5, 2002, and received a $.65 per hour raise two days later.
According to her affidavit submitted in support of her opposition to
the motion for summary judgment, plaintiff was satisfied with that
raise because Home Depot managers misrepresented that the greatest
raise for any Home Depot associate was $.75 per hour.

Home Depot hired Ross Sears, a male employee, within a few
days of hiring plaintiff. Both plaintiff and Sears were paid $10.00
per hour initially. In October, 2002, when plaintiff's pay was
increased to $10.65 per hour, Sears' pay was increased to $11.50 per
hour.

On November 19, 2002, Baird promoted plaintiff to the night
freight team supervisor position and increased plaintiff's pay to
$12.00 per hour. This amounted to a 12.67% raise. Plaintiff's
supervisor recommended the promotion.

In her position as night freight supervisor, plaintiff was
responsible for scheduling associates, drafting performance
summaries, disciplining associates who violated safety policies,
scheduling freight deliveries and signing for goods, ensuring that
freight was unloaded and that overstocked merchandise was stored
overhead, and for having the store clean by the time it opened.

On February 3, 2003, plaintiff's pay was increased from $12.00
per hour to $12.75 per hour. At the time of the raise, plaintiff
received a performance review that rated her overall as a

"performer," rated her leadership as "acceptable," and assessed her potential at the "grow in position" level.  Plaintiff complained about the raise to Baird and Patrick Patterson, the assistant store manager.  Patterson told her that it was the best he could do at the time.

Ken Meno was hired as the night operations manager at Home Depot's Troudale store in June, 2003.  Plaintiff has testified that she complained to Meno about her raise, and that she told Meno that she was given an insufficient raise because of her gender.   Meno was replaced by Mark Yamashita as the night operations manager in January, 2004.

In a performance review dated July 31, 2003, Meno assigned plaintiff an overall performance rating of "performer," rated plaintiff's leadership as "acceptable," and rated her potential as "grow in position."  Meno had initially rated plaintiff's overall performance and leadership higher, and revised the marks downward based upon the advice of Baird and Patterson.

In early February, 2004, Meno was reassigned to a merchandising Assistant Store Manager position.  In a performance evaluation dated February 2, 2004, Meno assigned plaintiff the same performance ratings he had assessed in plaintiff's earlier evaluation.  According to Meno's declaration submitted in support of plaintiff's opposition to the motion for summary judgment, while Meno was an assistant manager, the store manager required that he "downgrade [plaintiff's] performance reviews two levels from Outstanding to Performer."  Meno adds that he has no doubt "that

these performance reviews were downgraded because of [plaintiff's] gender," and that he "was never required to downgrade any other male department head evaluations."

At the same time she received the February, 2004 performance evaluation, plaintiff received a 13% pay increase, which raised her pay from $12.75 per hour to $14.40 per hour.  Baird testified that this raise was unusually high, and that plaintiff had been "lower in the pay band" of similar managers before the raise.

During the time in which plaintiff worked as a freight team department supervisor, 25 other employees at the Troutdale Home Depot worked at times as supervisors in the various Home Depot departments.  Home Depot asserts that, including plaintiff, six of these supervisors were female, and that three of the female supervisors earned more than plaintiff.  Home Depot asserts that the other two females, who earned less than plaintiff, became supervisors nearly two years after plaintiff was promoted. Plaintiff disputes this assertion, noting that, according to documentation Home Depot submitted to the Oregon Bureau of Labor and Industries (BOLI), the Troutdale Home Depot employed only two other female supervisors while plaintiff worked for Home Depot as a supervisor.  Plaintiff adds that both of these females were paid more than she was because they transferred to the Troudale store from other stores at a higher rate of pay.

Some male supervisors were paid more than plaintiff, and some were paid less.  According to paragraph 10 of the declaration of Alisa Grandy, Regional Human Resources Manager for Home Depot's

FINDINGS AND RECOMMENDATION - 7

Pacific Northwest Region, other department supervisors who earned more than plaintiff did so because of legitimate factors such as greater qualifications, education, work experience, and job skills; higher wage pay while working for previous employers; a higher starting wage with Home Depot than plaintiff's; longer tenure with Home Depot; and higher evaluations under Home Depot's merit system, based upon factors unrelated to gender.  For the reasons briefly noted in the discussion section below, plaintiff's motion to strike these assertions is granted.

Home Depot employs both day and night assistant store managers (ASMs).  Plaintiff was interested in being promoted to a night assistant store manager position.  When her deposition was taken, plaintiff stated that she applied for the night operations ASM position after Meno left in January, 2004, and was replaced by Yamashita.  Home Depot has submitted documents indicating that plaintiff did not apply for the ASM position, and asserts that plaintiff testified that she told Meno before he left that, though she was interested in his position, she knew she did not have the required experience.  Plaintiff contends that the documents Home Depot cites should be stricken because they are not properly authenticated and are hearsay.  She further asserts that, though she did tell Meno that she lacked the required experience for the ASM position, she did so when Meno first became her supervisor, not when he later left.

The transcript of plaintiff's deposition supports plaintiff's assertion as to the timing of her remark that she lacked the

experience required for the ASM position: When asked when she first
expressed an interest in the "night ops job," plaintiff said that
she "expressed it to Ken Meno when he first came in," and that she
knew she "didn't have the experience at the time" because she still
needed training.

Yamashita was selected for the night ASM position in January,
2004, when Meno left.  He had been a freight supervisor for 26
months when he was selected.  Yamashita had been named Night
Operations Manager of the Year in 2002, and had received very
positive performance evaluations in 2003.

Yamashita left the night ASM position in August, 2004.
Plaintiff applied for the position, which was not filled.  Home
Depot asserts that the position remained open because of budgetary
restrictions.  Plaintiff contends that budgetary restrictions did
not prevent Home Depot from filling the position.

Home Depot offers Department Supervisor Training (DST)
to employees who are interested in becoming Assistant Store
Managers.  This 36-hour training course is offered a few times a
year at Home Depot's offices in Tigard.

Plaintiff requested DST training.  Home Depot asserts that
plaintiff would not make herself available for training during the
day, when it was offered, and that it arranged for plaintiff to take
that training by herself after her shift at the Troutdale store,
with Meno available to answer questions.

Plaintiff completed one unit of DST training.  Home Depot
asserts that plaintiff was offered another DST class "on short

FINDINGS AND RECOMMENDATION - 9

notice but declined to participate."  Plaintiff denies that she would not make herself available during the day for DST training, and asserts that Baird gave her a two-day oral notice of the training, but declined to schedule her for training.  She further asserts that "male employees were placed on a schedule for DST training, with two or more weeks notice."

Home Depot asserts that on April 24, 2003, plaintiff was disciplined and received a "final counseling" for violating its "banner barricade" policy and for using the "rabbit switch" while operating machinery.  A document in the record titled "Discipline Process Tracking" notes a violation of "ignoring banner barrier requirements during initial open hours," and "running ERJ with rabbit button on sales floor."  The document indicates that Baird conducted a "final counseling session," and that plaintiff was concerned that the next violation would result in her termination. Plaintiff contends that she never received any disciplinary notices for safety issues or received a performance evaluation that indicated that she had any safety issues.  In her declaration submitted in support of her opposition to the motion for summary judgment, plaintiff asserts that she never saw the document in question before this litigation, and that the "counseling session" referenced in that document did not occur.

Baird has testified that plaintiff had a number of performance problems, including "a sustained problem with attendance and with availability for any kind of activities outside of her very rigidly scheduled shift which was a graveyard shift."  He added that

plaintiff had problems with "punctuality," and "availability for shifts outside of her normally scheduled shift."  Baird testified that plaintiff "would never attend any store team meetings," and that "there were a number of safety issues" involving plaintiff.

In July, 2004, Ryan Pieratt became the Store Manager of the Troutdale Home Depot.  Pieratt told plaintiff that she needed experience on the day shift, and has testified that plaintiff's chances for a promotion were hurt because she would not work days.

The record before the court includes a copy of a Home Depot document entitled "Department Supervisor to Assistant Manager," which describes the characteristics of a "Department Supervisor ready for promotion."  The required characteristics listed include customer and leadership skills, a good safety record, and the ability to enforce safety policies.

As noted above, Yamashita became the night operations ASM in January, 2004.  In that position, he worked closely with plaintiff. Plaintiff has testified that Yamashita was a "practical joker" who made jokes at the expense of her and others.

Plaintiff went on maternity leave several months after Yamashita became the night operations ASM.  When she returned from maternity leave, plaintiff arranged with Ryan Pieratt, the store manager, to start her shifts at a later time for a few months. According to plaintiff's declaration, though these later starts had been agreed upon, shift meetings that she had formerly run as a Night Supervisor were rescheduled from later in the shift to immediately at the beginning of the shift after she returned.

Yamashita met with the freight crew at the start of the shift, and would give plaintiff a hard time if she arrived during the meeting. Plaintiff testified that Yamashita knew that she would be late because of her arrangement with the store manager, and that he would "put her down" in front of the crew with comments about their supervisor being late again, and not setting an example.

When plaintiff returned from maternity leave, Yamashita arranged for plaintiff to take breaks in the training room during her shift to express breast milk for her baby. Plaintiff testified that, on three occasions, Yamashita used the overhead page system to tell other employees to report to the training room while she was expressing milk, and rattled the door handle himself and sniggered several other times while she was in that room. She testified that no other employees entered the room, and that she considered Yamashita's conduct a joke the first time he made the announcement on the page system. Plaintiff also testified that Yamashita made comments about bringing cereal for the pumped milk that she stored in the managers' refrigerator. According to her declaration, plaintiff reported Yamashita's conduct to Meno, who in turn reported the conduct to the store manager. According to Meno's declaration, Pieratt ignored Meno's reports concerning Yamashita's treatment of plaintiff, and no corrective action was taken. Meno also states that Pieratt treated plaintiff less favorably than male employees and was not as responsive to plaintiff's complaints about issues with subordinates. Meno states that Pieratt characterized

FINDINGS AND RECOMMENDATION - 12

plaintiff's complaints as "whining," and told him that he was frustrated at having to deal with "women and all their issues."

Plaintiff complained to Baird that Yamashita was managing the freight team and usurping her managerial authority.  She also complained to him about what she considered to be Yamashita's unsafe operation of equipment.  After Baird spoke with him about these complaints, Yamashita told the freight team that he was very upset that someone had complained about him to management.  Plaintiff testified that Baird told her he would not tell Yamashita who had complained, but that Yamashita saw plaintiff in Baird's office just before he told the freight crew that he was upset about the complaints.  She further testified that Yamashita told the freight crew that whoever had complained was "in for it" because he did not like "back stabbers."  She added that some members of the freight team told Yamashita that he deserved the complaints because of his conduct.  Plaintiff asserts that, after seeing her talking with Baird shortly before he was reprimanded, Yamashita put "two and two together," and subsequently assigned her "cruddy jobs."

Plaintiff testified that Home Depot later terminated Yamashita after he allowed the freight team, including herself, to play football during a lunch break.  She testified that she had understood that "horseplay" was a violation of the work conduct rules, and that an associate had been injured while playing football.  In his declaration submitted in support of plaintiff's opposition to the motion for summary judgment, Jeff Pulicella, a Department Supervisor during this period, stated that Pieratt told

him that Yamashita was terminated because he falsified documents, and would not have been terminated for the safety violations. Pieratt has testified that Yamashita was terminated both for safety violations and for falsifying documents.

Pulicella has submitted a declaration stating that, though he was paid nearly $2 per hour more than plaintiff while he and plaintiff were working as department supervisors, they did the same work and held the same title, and there was nothing in his experience or education that justified a difference in their pay. In addition, Pulicella stated that Pieratt offered him a fully flexible schedule, and assured him that he could come in late and leave early as often as he needed to without affecting his pay rate or opportunities for advancement. Pulicella also stated that, shortly after Pierrat became a store manager, he told Pulicella that he "would be getting rid of" plaintiff, and that, "as a woman," plaintiff "could not handle the guys on the freight team."

On November 9, 2004, Randy Kerr, a Home Depot loss prevention specialist, observed Kamil Samad, an employee on the night freight team, disregard the banner barricade policy. After Kerr reported this conduct, Pieratt terminated Samad. When Pieratt told plaintiff that Samad would be terminated for the safety violation, plaintiff told him it was "bullshit" and walked out. Plaintiff has testified that this exclamation reflected her opinion that Samad "was the hardest working person on the team," and that she had been trying to have four or five other employees terminated because of their behavior, work ethics, and attendance. She added that she walked

out after expressing her displeasure because Samad was entering the room and "they" wanted her out "while they terminated her." According to plaintiff's declaration, Pieratt was aware that the violations for which Samad was terminated had occurred on other shifts as well, but that the safety policies were only enforced "when minorities were involved." Plaintiff adds that she was the only "minority" on the night freight team after Samad was terminated, and that the "only other woman on the freight team quit" on the day plaintiff was terminated.

On November 11, 2004, plaintiff was called into a meeting with Pieratt and Amy McDonald, who had begun working as the Troudale Home Depot HR manager in September, 2004. Pieratt asked plaintiff why she had made the "bullshit" comment. Plaintiff told him that others had committed safety violations far more serious than the one for which Samad was terminated. Pieratt has testified that he then terminated plaintiff after talking with Samad and finding that "they did not follow standard operating procedures at night with regard to safety" and "[a]fter discussing with [plaintiff] and finding out that that was true . . . ."

In his declaration, Pulicella states that from Peirrat's statements, it was clear that plaintiff would not have been terminated if she was not female. He also states that Pieratt told him that he had been aware that various departments violated the banner barricade policy during the night shift, and that he did not enforce the policy "until some time after [plaintiff] was terminated from employment." In his declaration, Meno states that he is

unaware of any time during his employment with Home Depot when "any
supervisor or manager . . . was terminated for disagreeing with a
personnel decision or for condoning a safety violation."  He adds
that he had "personally challenged a termination decision of an
associate for safety," and was not terminated.

Meno was plaintiff's direct supervisor beginning in June,
2003.  Meno states that he considered plaintiff an exemplary
employee whose performance exceeded that of any other department
supervisor he had supervised.  Meno states that plaintiff was able
to perform both the Assistant Manager duties and the duties of her
own position when Meno was not at the store.  Meno opines that, as
of February, 2004, plaintiff was fully capable of performing the
Night Operations Manager duties.  He also opines that, as of
July 31, 2003, plaintiff was "on track" to be promoted to the
Assistant Store Manager position by the end of July, 2004.

Meno's declaration further states that, when he became her
supervisor, Meno realized that plaintiff was not being treated
fairly, compared to her male counterparts, in several areas.  As
examples, Meno cites plaintiff's work on the night shift without a
salaried manager present, Home Depot's failure to provide plaintiff
Department Supervisor Training (DST), and plaintiff's rate of pay,
which Meno characterizes as substantially lower than that of her
male counterparts in the Troutdale Home Depot and at other Home
Depot stores in the district.  Meno states that he made several
unsuccessful attempts through management to schedule plaintiff for
formal DST classes, and finally obtained the course materials for

plaintiff to work through on her own.  Meno also states that he
compared plaintiff's rate of compensation to that of her male
counterparts in conversations he had with Joyce Snead, Home Depot's
District Manager.  Meno states that, though he raised the issue of
the disparity between plaintiff's pay and the pay of male employees
with store managers, the human resource manager, the district
manager, and two employee relations managers, plaintiff did not
receive a pay increase for more than eight months.

From November, 2002, through February, 2004, plaintiff was the
lowest paid department supervisor at the Troutdale Home Depot.
Baird, who testified that plaintiff was "clearly" the lowest paid
department supervisor, said that plaintiff's pay was based upon her
performance.  After Meno complained that plaintiff was being paid
less than comparable male employees, Baird asked for documentation
of her performance that would justify higher pay.  As noted above,
Baird instructed Meno to downgrade the performance evaluation that
Meno prepared.

Before bringing this action, plaintiff filed administrative
complaints of gender-based discrimination with the Oregon Bureau of
Labor and Industries (BOLI) and the Equal Employment Opportunity
Commission.  In a Notice issued on December 9, 2005, BOLI stated
that it had found no substantial evidence that Home Depot had
retaliated against plaintiff based upon her alleged opposition to
unlawful discrimination, and had found substantial evidence of
"disparate treatment, termination" based upon plaintiff's gender.

**PLAINTIFF'S CLAIMS**

Plaintiff brings several state and federal claims of gender-based discrimination.

The first claim, brought pursuant to Title VII, alleges that Home Depot discriminated against plaintiff in the terms and conditions of her employment, and terminated her, because of her gender.  This claim alleges that plaintiff suffered lost wages and benefits, and continues to suffer these losses.  Based upon this claim, plaintiff seeks recovery of "future lost wages and benefits and lost earning capacity in amounts to be determined at trial."

The second claim, which is also based upon Title VII, alleges that Home Depot unlawfully discriminated against plaintiff and terminated her "because she opposed defendant's practice of discriminating against her on the basis of her sex in the terms and conditions of her employment."

The third claim is brought pursuant to the federal Equal Pay Act, 29 U.S.C. § 206(d)(1).  This claim alleges that Home Depot did not pay plaintiff wages that were equal to those paid to its comparable male employees.

The fourth claim alleges that Home Depot violated Or. Rev. Stat. § 652.220 by discriminating "between the sexes in the payment of wages for work of comparable character, the performance of which requires comparable skills."  In the alternative, or in addition, this claim alleges that Home Depot "paid plaintiff wages at a rate less than that at which it paid male employees for work of comparable character, the performance of which requires comparable

skills."  This claim seeks recovery of allegedly unpaid wages and liquidated damages pursuant to Or. Rev. Stat. § 652.230(2).

The fifth claim alleges that plaintiff's termination was wrongful under Oregon law because it "was motivated in substantial part in response to and in retaliation for plaintiff's exercise of her important rights as an employee to be free from retaliatory and discriminatory treatment based on her protected classifications." This claim further alleges that adequate remedies do not exist under plaintiff's statutory claims for relief.  Plaintiff seeks recovery of punitive damages, as well as attorney fees and costs, on this claim.

The sixth claim alleges that Home Depot violated Or. Rev. Stat. § 659A.030 by discriminating against plaintiff in the terms and conditions of her employment and by terminating plaintiff on the basis of her gender.

The seventh claim alleges that Home Depot violated Or. Rev. Stat. § 659A.030 by retaliating against plaintiff in various ways based upon her opposition to gender-based discrimination.


**DISCUSSION**

I. Motions to Strike

Before analyzing defendant's motion for summary judgment, I will briefly address the parties' motions to strike.

A. <u>Plaintiff's motion to strike</u>

Plaintiff moves to strike the assertion, set out in Alisa Grandy's declaration, that the higher pay of all department supervisors who were paid more than plaintiff reflected legitimate factors such as greater qualifications, education, work experience and job skills, higher wages from previous employers, longer tenure, or higher evaluations. Plaintiff contends that Grandy is not competent to present evidence as to the basis for the pay decisions in question because she was not involved in those decisions.

I agree. Though it appears that Grandy is qualified to present evidence about Home Depot's wage policies and the factors that its managers are supposed to consider when establishing pay rates for employees, Grandy was not involved in the particular pay decisions at issue in this litigation. In the absence of evidence that she participated in the decisions, Grandy's assertion that all the decisions were based upon legitimate factors is not based upon the requisite personal knowledge. Home Depot's contention that paragraph 10 of Grandy's declaration is admissible under Fed. R. Evid. 1006 is not persuasive. That Rule, which provides that voluminous records may be presented to the court in the form of a summary, is inapplicable: Paragraph 10 does not include a condensation of voluminous records, but instead reflects Grandy's opinion, based upon her purported review of employment records. Accordingly, plaintiff's motion to strike this paragraph is granted.

B. <u>Defendant's motions to strike</u>

    1. <u>Declaration of Jeff Pulicella</u>

    Defendant moved to strike the declaration of Jeff Pulicella, or, in the alternative, for the opportunity to take Pulicella's deposition.  During oral argument on October 11, 2007, I denied the motion to strike Pulicella's declaration, and granted the motion to take Pulicella's deposition.  Defendant moves separately to strike paragraphs 2, 3, 6, 10, 11 and 12 of Pulicella's declaration.[3]

    Paragraph 2 of Pulicella's declaration states that Pulicella was offered a job without filling out an application, and without Home Depot knowing anything about his background other than that he had been a police officer for 11 years.

    Home Depot moves to strike this paragraph on the grounds that Pulicella has no personal knowledge of what Home Depot knew about his background, and provided no foundation for his knowledge of what factors Home Depot may have used in establishing his initial pay.  I deny the motion to strike this portion of Pulicella's declaration because I interpret Pulicella's statement as referring to what he told Home Depot--a matter about which Pulicella could be expected to have personal knowledge.  Though Pulicella subsequently testified that he informed Home Depot that he had experience supervising painting crews before he started working for Home Depot, he testified that he was offered a job in an earlier meeting, and did

---

    [3]After taking Pulicella's deposition, defendant submitted a second motion to strike these paragraphs.  In analyzing the motion to strike Pulicella's declaration, I have considered the arguments Home Depot offers in support of both motions.

FINDINGS AND RECOMMENDATION - 21

not testify that he referred to that experience in the earlier meeting.  His testimony and declaration are therefore not inconsistent.

Paragraph 3 of the declaration states that, when he was hired, Pulicella had no relevant prior experience in construction or remodeling, other than work on his own home, and that he had no relevant prior retail experience.  That paragraph adds that any information Home Depot has to the contrary is false.  Home Depot moves to strike this paragraph on the grounds that though the statements "may be relevant to show that Pulicella lied on his application," they are not relevant to any claim in this action.  It adds that the only facts that are relevant are those that were known to Home Depot when it determined Pulicella's compensation.  Home Depot also asserts that this statement is inconsistent with Pulicella's testimony that he had supervised a painting crew.

I grant the motion to strike the portion of paragraph 3 of Pulicella's declaration stating that Pulicella had no prior painting experience before he was hired because it is inconsistent with Pulicella's deposition testimony.  I deny the motion to strike the balance of paragraph 3.

Paragraph 6 of Pulicella's declaration states that Pulicella had much more first hand experience working with plaintiff than did Pierrat or Baird, that plaintiff was "an exemplary employee" whose "top priority was to ensure there were no safety violations," and that plaintiff was as qualified as Pulicella to work as a department head.

Home Depot contends that this paragraph should be stricken because Pulicella is not competent to testify as to whether or not plaintiff was an exemplary employee, as to plaintiff's priorities, or as to whether plaintiff had the qualifications that Home Depot considered necessary for the department head position.

I disagree.  A trier of fact crediting Pulicella's testimony about the duration and closeness of the working relationship between Pulicella and plaintiff could conclude that Pulicella was competent to testify as to plaintiff's qualities as an employee.  A trier of fact who concluded that Pulicella had worked closely with plaintiff could reasonably conclude that Pulicella had a knowledge of plaintiff's priorities that was based upon observation and experience, and could conclude that Pulicella had the knowledge and experience required to state an opinion as to whether plaintiff was as qualified as Pulicella to work as a department supervisor.  I therefore deny the motion to strike paragraph 6.

Paragraph 10 of Pulicella's declaration states that Pulicella did not have any skills, experience, or education that justified a difference in pay when he and plaintiff both worked as freight team department heads.  This paragraph adds that, based upon plaintiff's performance, Pulicella did not believe there was any basis for paying plaintiff less than other department heads were paid.  This paragraph also states that Pulicella was familiar with factors used to determine employees' rates of pay, and that Pulicella researched pay rates at other stores.

Home Depot contends that Pulicella lacks the personal knowledge of the factors it used to determine employee's rates of pay, and that he has not established a foundation for his statement that there was no basis to pay plaintiff less than other employees working as department heads.  It also contends that Pulicella's statement that he was familiar with the factors used to determine pay rates and researched pay rates at other stores is inconsistent with his testimony that he had never seen a copy of Home Depot's administrative guidelines.

It appears that Pulicella had sufficient knowledge about plaintiff's experience and skills and the knowledge and skills required to work as a freight team department head to offer an opinion as to whether there was a justifiable basis for paying her less than he was paid.  It appears that Pulicella had enough experience working at Home Depot to form an admissible opinion as to whether there was a basis for paying plaintiff less than other department heads were paid.  Pulicella's testimony that he had not seen a copy of Home Depot's administrative guidelines is not necessarily inconsistent with his declaration that he knew what factors were considered in determining rate of pay, because he could have learned of the relevant factors from other sources.  I therefore deny the motion to strike paragraph 10.

In the 11th paragraph of his declaration, Pulicella states that he was very familiar with plaintiff's commitment to safety, and knew that plaintiff was not terminated for tolerating or condoning safety violations.  This paragraph states that "Pierrat's statements made

clear" to Pulicella that plaintiff would not have been terminated if she was not female.

Home Depot contends that this portion of paragraph 11 should be stricken because it lacks foundation and "is merely Pulicella's conclusory, subjective opinion of Pieratt's motivations." It also argues that Pulicella's assertion that Pieratt stated that plaintiff could not handle the guys on the freight team is inconsistent with Pulicella's testimony that Pieratt said that the members of the team did not respect plaintiff because she was female. I disagree. Pulicella's declaration provides a sufficient foundation for his opinion that, but for her gender, plaintiff would not have been terminated. In addition, Pulicella's declaration about Pierett's statements concerning plaintiff's problems with the night crew is not necessarily inconsistent with his testimony on that issue. The motion to strike paragraph 11 is therefore denied.

In paragraph 12 of his declaration, Pulicella states that he had observed that plaintiff was treated differently than her male counterparts at Home Depot. As an example of this treatment, he states that, when he told management that his male associates on the night shift were underpaid, pay increases were made "outside the normal pay increase cycle." Pulicella adds that Peirrat told him he could do this by "getting approval at the district level," but that Peirrat ignored plaintiff when she raised the issue of her pay.

Home Depot contends that these statements should be stricken because Pulicella has not identified the male associates who allegedly received pay increases, because he did not establish that

other employees were "proper comparators," and because he "has no personal knowledge of how Home Depot made pay decisions for its associates."  I disagree, and deny the motion to strike these statements.  Based upon the personal experience at Home Depot described in his declaration, it appears that Pulicella had the knowledge required to provide admissible testimony about the matters set out in paragraph 12 of his declaration.

    2. Declaration of Ken Meno

    Home Depot moves to strike all or portions of paragraphs 2, 3, 5, 7, 8, 14, and 15 of the declaration of Ken Meno.

    Paragraph 2 includes Meno's statements that plaintiff had worked without the support of a salaried manager for several months before he arrived, and that she subsequently worked without such a manager even after he left the Troutdale store.  Meno further stated that this was in contrast to other stores in the district in which male freight operation department heads worked with a salaried manager, and that plaintiff "was not receiving management support in addressing several issues."

    Home Depot contends that these statements should be stricken because Meno has not shown a foundation for his purported knowledge of whether a team was working without a manager, stated how he knew how other stores in the district were operating, or stated how he knew that plaintiff was not receiving support on "several issues."  I disagree.  In portions of paragraph 2 to which Home Depot does not object, Meno states that he spent several days reviewing personnel

files, talking to other managers, and meeting with "the team" when
he took over as Night Operations Manager.  He also states that he
had worked in several other stores before working at the Troutdale
Home Depot.  This experience appears to provide a sufficient basis
for Meno's statements regarding practices in other stores, and for
his assertion that plaintiff did not receive managerial support
before he began working at the Troutdale store.  Though Meno did not
specify the "several issues" on which he found plaintiff was not
receiving support, those issues appear to be sufficiently identified
in the remainder of Meno's declaration.  The motion to strike is
therefore denied as to the preceding statements.  The motion is
granted as to Meno's statement that plaintiff continued to work
without a salaried manager present after Meno left the Troutdale
store, because nothing in Meno's declaration indicates how Meno
obtained this knowledge.

Paragraph 3 includes Meno's statements that plaintiff needed
to receive advanced notice of training classes because these were
held during the day, which would require plaintiff to change her
sleep patterns and schedule child care.  It also includes Meno's
assertion that plaintiff's male counterparts were sometimes notified
of training sessions a month in advance, but plaintiff was given
only a few days notice before classes were held.

Home Depot moves to strike these statements on the grounds
that Meno "had no personal knowledge of what was more important for
plaintiff or why," and whether other employees may have had issues
of sleep and child care that would have made their advanced receipt

FINDINGS AND RECOMMENDATION - 27

of notice of training programs no less important.  Home Depot also
asserts that the statements regarding other employees' advance
notification should be stricken because Meno provided no foundation
for his conclusion that others received more advance notice than did
plaintiff, and because Meno failed to identify the "male
counterparts" who received more notice.

Based upon a careful review of Meno's entire declaration, I
conclude that Meno has established a sufficient foundation for these
statements, with the exception of the assertion that, because of
sleep and child care issues, plaintiff had a greater need for
advanced notification of scheduled training than did other
employees.  Accordingly, the motion to strike is granted as to that
portion of paragraph 3 of Meno's declaration, and is denied as to
the balance of the paragraph.

In the challenged portion of the 5th paragraph of his
declaration, Meno states that any male with plaintiff's performance
would have received at least an "achiever" rating in the performance
evaluation.  Meno adds that he has no doubt that plaintiff's
performance reviews were downgraded because of plaintiff's gender,
and that Seibert and Martindale did not work with plaintiff or have
the opportunity to review her performance "other than possibly a
rare or sporadic occasion."

Home Depot moves to strike these statements on the grounds
that Meno lacked the personal knowledge of how other employees would
have been rated or why plaintiff's supervisors downgraded her
review.  It also contends that Meno did not have personal knowledge

of whether Seibert or Martindale had an opportunity to observe
plaintiff's performance.

I disagree, and deny the motion to strike this portion of
Meno's declaration.  Based upon a review of Meno's declaration as a
whole, it appears that Meno had sufficient experience with the
review process to offer an admissible opinion as to whether any
other employee who performed as did plaintiff would have received at
least an "achiever" rating.  His statement that he had no doubt that
plaintiff's performance review was downgraded because of plaintiff's
gender addresses not a fact, but an opinion as to which it appears
he is qualified to testify, based upon his experience.  It also
appears that Meno's work at Home Depot afforded him the opportunity
to draw reasonable conclusions about the opportunities that Seibert
and Martindale had to observe and review plaintiff's performance.

In the challenged portion of the 7th paragraph of his
declaration, Meno states that he had a conversation with Joyce
Speed, the District Manager, that confirmed the importance, under
Home Depot's pay guidelines, of paying employees in the District
"equitably."  This portion also includes Meno's assertion that, in
reviewing rates of pay, he "discovered that Nancy Delima was paid
significantly less than other male DH's with similar lengths of
service."

Home Depot contends that these statements should be stricken
because Meno does not have the personal knowledge required to
provide evidence on these matters, has not provided a foundation for
his knowledge of the factors used to determine pay rates for various

individuals, and has failed to identify the "male DH's" who were paid more than plaintiff was paid.

These arguments are not persuasive. Meno's statement about his conversation with Speed provides a foundation for his assertion that the importance of equitable pay under Home Depot's pay policy was confirmed. Meno set out the basis of his conclusion that plaintiff was not paid equitably, which was the disparity in pay between plaintiff and "other male DH's with similar lengths of service" in the District. This provides a sufficient basis for Home Depot to challenge Meno's conclusion, because it is expected to have employment records showing the length of service of other male department heads in the District at the time Meno states that he made this comparison. I therefore deny the motion to strike these statements.

In the portion of the 8th paragraph of Meno's declaration which Home Depot challenges, Meno asserts that no individual from Home Depot "ever raised any legitimate reasons as to why [plaintiff] was so poorly compensated," and that Meno never "witness[ed] any reason why Nancy should not receive an increase." Home Depot also challenges Meno's assertion that the store manager could have obtained approval from the district manager for an "out of cycle pay increase," and that plaintiff's "greatest percentage increase" resulted from Meno's approval of a raise for her while he was the acting store manager.

I grant the motion to strike Meno's statement that no one from Home Depot ever raised any legitimate reason as to why plaintiff was

FINDINGS AND RECOMMENDATION - 30

so "poorly compensated," because I agree that Meno could not know if anyone working for defendant ever gave a legitimate reason for plaintiff's compensation.  I deny the motion as to the balance of the statements, however, because Meno can testify as to whether he ever saw any reason why plaintiff should not have received a raise: It appears that, from his experience working for Home Depot, Meno would know whether a store manager could obtain approval for an "out of cycle" pay raise.  It also appears that Meno would know whether plaintiff's greatest percentage increase resulted from his approval of her raise.

In the portion of paragraph 14 which Home Depot challenges, Meno states that, during the time he worked for Home Depot, he was never aware of a supervisor or manager being terminated for disagreeing with a personnel decision or for condoning violation of a safety policy.  Home Depot also challenges Meno's statement that he challenged the decision to terminate an associate "for safety," and was not terminated.

Home Depot contends that these statements should be stricken because Meno did not provide a foundation for his knowledge of "why all Home Depot supervisors or managers were terminated," and has not "identified a foundation for his allegations of why supervisors were or were not terminated."

These objections fail.  Meno did not categorically state that no supervisors or managers were terminated for disagreeing with a personnel decision of condoning a safety violation while he worked for Home Depot.  Instead, he simply stated that he "was unaware" of

FINDINGS AND RECOMMENDATION - 31

such occurrences.  Meno has the required knowledge to testify as to whether he was aware of certain events.  He also has the personal knowledge required to state that he challenged a particular termination decision, and was not terminated.

Home Depot challenges all of the statements set out in paragraph 15 of Meno's declaration, in which Meno lists 11 ways in which Home Depot's operations and management are centralized.  Home Depot contends that Meno has no human resources experience with Home Depot, and that he has not established a foundation for knowledge of the information listed in this paragraph.

Based upon Meno's experience described in the declaration, it appears that Meno would be expected to have sufficient knowledge to testify as to statements 2, 3, 4, 5, 6, 7, 8, and 10.  The motion to strike is therefore denied as to those statements.  Because it is not clear from the declaration that Meno's experience would have given him the knowledge to testify as to statements 1 and 9 in paragraph 15, the motion to strike is granted as to these statements.


    3. Plaintiff's Declaration

Home Depot moves to strike portions of paragraphs 4, 6, 7, 10, and 11 of plaintiff's declaration.

In the portion of the 4th paragraph that Home Depot seeks to strike, plaintiff states that, in June of July 2003, she complained to Meno that her rate of pay was discriminatory.

Home Depot moves to strike this statement on the grounds that it is inconsistent with plaintiff's deposition testimony about her complaints concerning pay increases.  Home Depot cites plaintiff's testimony stating that she had a meeting in February 2003 in which she complained that she was not being paid enough, but that she did not, at that time, attribute the inadequacy of her pay to gender discrimination.  Home Depot asserts that plaintiff cannot create an issue of fact through a declaration that contradicts prior deposition testimony.

From the brief portion of plaintiff's deposition testimony cited in Home Depot's motion to strike, it is not possible to determine whether plaintiff's declaration is inconsistent with her deposition testimony.  Plaintiff's assertion that she told Meno in mid 2003 that her pay was discriminatory is not necessarily inconsistent with a complaint to different managers in February of that year that did not cite gender discrimination as the reason for her inadequate pay.  The deposition question eliciting plaintiff's response did not ask plaintiff to list every subsequent complaint about the pay reflected in the cited exhibit, and plaintiff could have concluded after February 2003 that her pay was discriminatory. Because plaintiff's declaration is not necessarily inconsistent with the cited deposition testimony, the motion to strike this portion of the declaration is denied.

In the portion of the 6th paragraph of plaintiff's declaration that Home Depot moves to strike, plaintiff states that she was willing to make herself available during the day for DST training,

that Baird declined to schedule her for such training with the two weeks notice given to male employees, and that the DST documentation provided by Home Depot is inaccurate to the extent that it shows that she received any formal training.

Home Depot seeks to strike plaintiff's statement that she received no formal training and that DST documentation to the contrary provided by Home Depot was inaccurate because it is inconsistent with plaintiff's deposition testimony that she took one class of DST training.  It moves to strike plaintiff's assertion that male employees were provided with two weeks of notice of training opportunities on the grounds that plaintiff has not provided a foundation for her purported knowledge of the notice provided to those employees.

The motion to strike is granted as to plaintiff's assertion that she received <u>no</u> formal training, and to the extent that plaintiff states that male employees received two weeks notice that training would be offered.  The motion is denied as to plaintiff's assertion that she was willing to make herself available for DST training during the day, because Home Depot has cited no deposition testimony that contradicts that assertion, and plaintiff's willingness to make herself available for training during the day is a matter about which she is competent to testify.

In the portion of the 7th paragraph of plaintiff's declaration to which Home Depot objects, plaintiff states that she has never seen a document entitled "Discipline Process Tracking" that references a "final counseling session" with Baird dated April 24,

2003, and references a violation for ignoring a banner barricade.
Plaintiff also states that she was never given a "counseling
session" that was referred to in the document.  Home Depot objects
to these statements on the grounds that they are inconsistent with
plaintiff's deposition testimony in which, having been shown the
document and asked if she recalled having any discussion with Baird
about the banner requirement in early 2003, she replied that she
"remember[ed] having a discussion with him."

I deny the motion to strike the challenged portion of
paragraph 7 because it is not necessarily inconsistent with
plaintiff's deposition testimony.  In her declaration, plaintiff
states that she was not given a "counseling session" as represented
in the discipline tracking document.  That is not necessarily
inconsistent with plaintiff's deposition testimony that she recalled
having a discussion about the matter with Baird, because plaintiff
and Baird could have discussed the banner barricade requirements
without any mention of plaintiff's alleged violation, and have
discussed a violation by plaintiff without the conversation rising
to the level of formal "counseling" implied by the record of the
"discipline process tracking" document in question.

In the portion of paragraph 10 to which Home Depot objects,
plaintiff states that, after returning from maternity leave in May
2004, she told Meno that Yamashita had teased her about expressing
milk for her baby, had paged employees to go into the training room
while she was expressing milk, and had taunted her by shaking the

handle to the room and saying that he would bring cereal for the milk she stored in the refrigerator.

Home Depot contends that these statements are inconsistent with plaintiff's deposition testimony that she did not recall asking Meno to talk to Yamashita about this conduct but was "pretty sure he did." Home Depot also objects to the statements as inconsistent with plaintiff's testimony that she complained generally about Yamashita's management style, but did not testify "that he had harassed her or treated her differently because she was a woman."

I deny the motion to strike these particular statements, because plaintiff's declaration is not necessarily inconsistent with her deposition testimony. Plaintiff's declaration that she told Meno that Yamashita harassed her is not inconsistent with her deposition testimony that she does not recall asking Meno to talk with Yamashita about his conduct. In addition, though portions of plaintiff's deposition testimony have been omitted from the record submitted to the court, it appears that plaintiff testified that she complained about the incidents involving Yamashita set out in paragraph 10 of her declaration. On page 214 of the plaintiff's deposition, counsel for Home Depot asked plaintiff if she had told everything that she recalled about the complaints she made concerning Yamashita. In response, plaintiff asked counsel whether he was referring to "just the harassment ones or any complaints?" This certainly suggests that plaintiff had characterized Yamashita's conduct as harassment.

In the portion of the 11th paragraph of plaintiff's declaration to which Home Depot objects, plaintiff states that Pieratt was aware that the violation for which Samad had been terminated had occurred on other shifts, "but chose not to enforce the policy, except when minorities were involved."

Home Depot contends that this statement should be stricken because plaintiff had no personal knowledge about Pieratt's awareness or why he had chosen to enforce a policy. I agree, and grant the motion to strike this statement.

## II. Defendant's Motion for Summary Judgment

### A. Standards for Evaluating Motions for Summary Judgment

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be

resolved against the moving party.  Id. at 630-31.  The evidence of
the nonmoving party is to be believed, and all justifiable
inferences are to be drawn in the nonmoving party's favor.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985).  No genuine issue
for trial exists, however, where the record as a whole could not
lead the trier of fact to find for the nonmoving party.  Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


B.  Plaintiff's Wage Claims Under the Equal Pay Act, Title VII, and
Oregon Statutes

     The Equal Pay Act (EPA), Title VII, and Or. Rev. Stat.
§ 652.220 all prohibit gender-based discrimination in compensation.

     In her complaint, plaintiff alleges generally that, during the
course of her employment, "male employees were paid more for
performing substantially similar work than plaintiff."  Though she
does not specifically identify particular pay decisions as
discriminatory in her complaint, from the material submitted in
support of and opposition to the motion for summary judgment, it
appears that plaintiff's claim of discriminatory pay under the EPA,
Oregon Law, and Title VII appears to center on two sets of decisions
concerning plaintiff's pay.  In the first of these, on October 7,
2002, plaintiff's pay was raised from $10.00 per hour to $10.65 per
hour.  Plaintiff contends that this raise violated state and federal
law because a male co-worker received a larger raise.  Plaintiff
also contends that she was paid at a discriminatory rate after she
was promoted to a supervisor position on November 19, 2002.

Plaintiff contends that her initial pay in that position and the raises she subsequently received reflected gender-based discrimination.

In its memoranda in support of the motion for summary judgment, Home Depot analyzes these periods as if they were pleaded as distinct and separate claims, and argues that it is entitled to summary judgment as to each "claim" based upon the applicable statute of limitations and other factors. However, plaintiff has not in fact brought distinct "claims" as to the various decisions made affecting her pay. Accordingly, in the discussion below, I do not consider the various pay determinations as separate "claims," and will not recommend granting partial summary judgment as to particular pay decisions. Instead, I simply address plaintiff's wage discrimination claim under each of the statutes upon which plaintiff relies.

1. <u>Wage Claim Under Equal Pay Act</u>

A two-year statute of limitations applies to violations of the Federal Equal Pay Act that are not "willful." 29 U.S.C. § 216 (applying statute of limitations set out in 29 U.S.C. § 255(a)). A three-year statute of limitations applies to violations that are "willful." <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 135 (1988); <u>see</u> 29 U.S.C. § 255(a). An employer can commit a "willful" violation without "knowingly" violating the statute. <u>Alvarez v. IBP, Inc.</u>, 339 F.3d 894, 908-09 (9th Cir. 2003), <u>aff'd</u>, 546 U.S. 21 (2005). Instead, the three-year statute of limitations applies if

the employer "disregarded the very 'possibility' that it was violating the statute." Id. at 909 (citing Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2nd Cir. 1999)).

In order to make out a prima facie claim of gender-based discrimination under the EPA, a female plaintiff must show that her employer paid different wages to men who were performing substantially equal jobs under similar working conditions. Maxwell v. City of Tucson, 803 F.2d 444, 446 (9th Cir. 1988); Gunther v. County of Washington, 623 F.2d 1303, 1313 (9th Cir. 1979), aff'd, 452 U.S. 161 (1981).

Defendant Home Depot contends that plaintiff's claims under the EPA and Title VII are governed by the same "substantial equality" standards, and that plaintiff cannot establish that she was not paid the same as males who were performing substantially equal jobs under the same or similar work conditions. Defendant contends that, though plaintiff has identified male employees "who appear to have received a higher wage than herself," she cannot show that these employees performed substantially equal work under the same or similar working conditions. It asserts that plaintiff's night freight team supervisor position was unique, and that plaintiff cannot establish that her work required substantially the same skill, effort, and responsibility, and took place under substantially the same working conditions, as any of the other department supervisor positions at the Troutdale Home Depot.

Home Depot also contends that plaintiff's claim under the EPA is barred by the statute of limitations, because the last pay

determination of which plaintiff complains was made on February 2, 2004, more than two years before March 9, 2006, the date of the filing of this action.  Home Depot also contends that it is entitled to summary judgment on this claim because plaintiff cannot make out a prima facie case of unlawful discrimination or overcome certain defenses to pay disparity permitted under the EPA.

I disagree.  Home Depot acknowledges that, unlike analyzing claims of discriminatory pay brought under Title VII, in analyzing claims brought under the EPA, "each alleged discriminatory paycheck may be considered a new, discreet discriminatory action."  Def. Mem in Support of Mot. for Sum. Jud. at 17 (citing Gandy v. Sullivan County, 24 F.3d 861, 864 (6th Cir. 1994)).  Therefore, the pay raise plaintiff received on February 2, 2004, which plaintiff asserts was discriminatory, is not beyond the two-year EPA statute of limitations for non-willful discrimination.

Plaintiff has made out a prima facie case of unlawful gender-based discrimination in compensation, and has cited evidence supporting the conclusion that all department heads at the Troudale Home Depot are appropriate wage comparators.  Plaintiff has also produced substantial evidence supporting the conclusion that she was paid less than at least one male comparator, Pulicella, after March 9, 2004.  Descriptions in the record of the duties and experience of Pulicella and plaintiff create issues of fact as to whether the disparity in these employees' pay was more likely than not based upon gender.  In addition, plaintiff has shown the existence of evidence from which a trier of fact could conclude that

Home Depot's purported legitimate reasons for the disparity were not the true reasons, but were pretextual.  This includes evidence that Home Depot management required a supervisor to downgrade plaintiff's performance evaluation, and evidence that the manager who terminated plaintiff had said that he "would be getting rid of" plaintiff because he thought that women were ill-suited to plaintiff's position.

Even if the February 2, 2004 raise was beyond the statute of limitations period, I would recommend denying Home Depot's motion for summary judgment on the EPA claim because plaintiff has shown the existence of evidence creating material issues of fact as to whether Home Depot willfully violated the EPA.  This evidence includes Meno's assertion that he was required to downgrade plaintiff's performance evaluation, and that he told Home Depot's human resources personnel, store managers, district manager, and employee relations specialist that plaintiff's pay was discriminatory.  This evidence, along with evidence that Home Depot did not adjust plaintiff's rate of pay for more than eight months afer Meno made these statements, raises a triable issue of fact as to whether Home Depot knowingly or recklessly paid plaintiff less than similarly situated male employees.  Pieratt's transfer of Pulicella to the freight supervisor position, where it appears that he performed the same work plaintiff performed, but was paid substantially more, also supports plaintiff's assertion that Home Depot willfully discriminated against her in determining her compensation.  Evidence that Pieratt stated that, as a woman,

plaintiff was not well suited to supervise the freight team also
supports plaintiff's assertion that Home Depot intentionally
discriminated in establishing her compensation.

Home Depot's assertion that it is entitled to summary judgment
because any pay disparity between plaintiff and male comparators is
permitted under exceptions to the EPA also fails.  These exceptions
permit pay disparities resulting from a seniority system, a merit
system, a system that measures earnings or quantity or quality of
production, or from a differential based on any factor other than
gender.  29 U.S.C. § 206(d)(1); Maxwell, 803 F.2d at 446.  The
defendant has the burden of pleading and proving these affirmative
defenses.  Kouba v. Allstate Ins. Co., 691 F.2d 873, 875 (9th Cir.
1982).

Home Depot contends that its published employment policies and
the testimony of the Troutdale Home Depot HR Manager, the relevant
Regional HR Manager, and the relevant District HR Manager, establish
that it "sets the wages of its employees through a merit system as
well as other nondiscriminatory business reasons based on factors
other than sex."  It asserts that these policies and this testimony
establish that plaintiff's pay was based upon merit, as evaluated by
her supervisors according to established standards, and upon
relevant experience and education criteria.

I disagree.  Home Depot's adoption of an objective, gender-
neutral pay policy, and the testimony of Home Depot managers that
pay decisions are made on legitimate factors such as experience,
education, and performance, does not conclusively establish that

those policies were followed in pay decisions affecting plaintiff.
As noted in the section above discussing the motions to strike,
Grandy's assertion that plaintiff's rate of pay was based only on
legitimate factors such as qualifications, education, experience,
and job skills is inadmissible because Grandy did not participate in
the decisions concerning plaintiff's pay.  In addition, as is also
noted above, the record includes evidence that one of plaintiff's
supervisors was required to downgrade plaintiff's performance
evaluation, and evidence that the manager who ultimately terminated
plaintiff had opined that women were not suited for plaintiff's
supervisory position.  There is also evidence supporting the
conclusion that plaintiff had more relevant experience than at least
one comparator whose pay was considerably higher, and that Home
Depot did not adjust plaintiff's pay for many months after a
supervisor had opined that plaintiff was being unfairly compensated
because of her gender.  This, and other evidence in the record,
creates material issues of fact as to whether Home Depot can prevail
on any of its affirmative defenses.


2. <u>Wage Claim Under Title VII</u>

     Where, as here, a plaintiff initiates proceedings with a state
agency, a claim must be brought within 300 days of the allegedly
unlawful conduct.  <u>See</u> 42 U.S.C. 2000e-5(e)(1).  Plaintiff filed her
BOLI complaint on December 9, 2004, and timely filed her action in
this court.  Plaintiff therefore may recover under Title VII for any
discriminatory conduct, including discrimination in compensation,

that occurred up to 300 days earlier than that date.  Accordingly,
any discriminatory conduct occurring after February 12, 2004, is
within the statute of limitations period for Title VII.

In <u>Ledbetter v. Goodyear Tire & Rubber Co., Inc.</u>, 127 S. Ct.
2162, 2174 (2007), the Supreme Court rejected the argument that each
paycheck received following a discriminatory pay determination
constitutes a separate, actionable violation of rights under Title
VII, and restarts the statute of limitations period.  Instead, the
Court concluded that the statute of limitations period for bringing
a discriminatory pay claim under Title VII begins to run when the
employer establishes an employee's pay at an allegedly
discriminatory rate.

The holding in <u>Ledbetter</u> bars plaintiff from recovering under
Title VII for any discrimination in pay reflected in the amount of
her February 2, 2004 raise.  However, it is not clear that
plaintiff's potential to recover under Title VII for discriminatory
pay is entirely foreclosed under that decision.  Plaintiff contends
that, though <u>Ledbetter</u> precludes the argument that each paycheck
restarts the statute of limitations period, subsequent raises for
other employees that unfairly favor employees not of a plaintiff's
gender can restart the running of the statute of limitations.

I agree. Certainly, in the more common situation, a plaintiff
complains that a decision directly affecting her own pay reflects
intentional gender-based discrimination, and that decision starts
the running of the statute of limitations.  However, I agree that
there is nothing in the <u>Ledbetter</u> decision that precludes the

FINDINGS AND RECOMMENDATION - 45

statute of limitations from starting to run again if the employer subsequently discriminates, on the basis of gender, in establishing or raising the pay of another employee.

Plaintiff also contends that, after she received her last raise in February, 2004, Home Depot's increase of the pay of a male employee performing substantially similar work reflected gender-based discrimination against plaintiff. Based upon my review of the record, I conclude that there are material issues of fact as to whether this contention is well-founded. Accordingly, though the applicable statute of limitations precludes plaintiff's recovery under Title VII for any pay decisions implemented before February 13, 2004, Home Depot's motion for summary judgment on plaintiff's Title VII pay claim should be denied because material issues of fact exist as whether pay raises Home Depot implemented for any similarly situated male employee after that date reflected discrimination in favor of that male employee.

Except for the statute of limitations issue, claims of pay discrimination brought under Title VII are evaluated like those brought under the EPA. In Fosberg v. Pacific Northwest Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988), the Ninth Circuit observed that "[e]qual pay claims asserted under Title VII must satisfy the same substantial equality test applied to claims asserted under the EPA." Title VII claims are also subject to the same affirmative defenses. Maxwell, 803 F.3d at 446.

These additional issues were addressed above in analyzing Home Depot's motion for summary judgment on plaintiff's EPA claim. For

the reasons set out above, defendant's motion for summary judgment
on the compensation component of plaintiff's Title VII claim should
be denied.[4]


3. Wage Claim Under Oregon Statutes

Under Or. Rev. Stat. § 652.230(1), a claim of unequal pay
brought pursuant to Or. Rev. Stat. § 652.220 may be brought for
"unpaid wages to which the employee is entitled for the one-year
period preceding the commencement of the action." Under Or. Rev.
Stat. § 659A.030(a), a plaintiff may recover for damages incurred
because of unlawful discrimination for a one-year period preceding
the filing of a complaint with BOLI. Under Or. Rev. Stat.
§ 659A.820(1), a plaintiff must file a complaint with BOLI within
one year of the alleged unlawful discrimination in compensation.
Because plaintiff filed her BOLI complaint on December 9, 2004, she
can recover under Oregon statutes for any unlawful discrimination in
her compensation after December 10, 2003.

Home Depot contends that plaintiff's wage claim under Oregon
law fails for several reasons. It contends that, though Ledbetter
expressly governs only plaintiff's Title VII claims, that decision
bars her state-law claims as well, because the Oregon Supreme Court
would likely apply Ledbetter if presented with the same issue under
Oregon law. Home Depot acknowledges that the Oregon Supreme Court

---

[4]Even if I have erred in concluding that plaintiff's Title VII
wage claim is not barred by the statute of limitations under
Ledbetter, it appears that all the evidence that would support her
Title VII wage claim would be admissible as to the EPA claims.

has not addressed this issue, but asserts that it would likely reach
the same conclusion because Oregon courts consider federal court
decisions interpreting Title VII instructive in interpreting Oregon
statutes prohibiting various types of employment discrimination.
See, e.g., Cantua v. Creager, 169 Or. App. 81, 98-99, 7 P.3d 693
(2000); A.L.P. Inc. v. Bureau of Labor and Industries, 161 Or. App.
417, 422-23, 984 P.2d 883 (1999); Winnett v. City of Portland, 118
Or. App. 437, 442, 847 P.2d 902 (1993); Harris v. Pameco Corp., 170
Or. App. 164, 176, 12 P.3d 524 (2000).   Home Depot also contends
that plaintiff's wage claims fail under Oregon law for the same
reasons they fail under the EPA "because Oregon courts have
recognized that comparators under ORS 652.220 must be similarly
situated to the plaintiff, and that an employees 'different skills
and experience' can 'justify a salary differential.' "

     Home Depot's motion for summary judgment on the Oregon
statutory wage claim should be denied.   Though Oregon courts
generally consider federal decisions interpreting Title VII
instructive in evaluating claims under similar Oregon statutes, it
is not clear that the Oregon Supreme Court would apply the holding
of Ledbetter to claims under Oregon law.   The Oregon Supreme Court
might find that federal decisions interpreting the federal EPA,
under which each discriminatory paycheck restarts the statute of
limitations, are more consistent with Oregon statutes specifically
addressing wage discrimination.   Even if the reasoning of Ledbetter
were applied, for reasons discussed above, material issues of fact
exist as to whether plaintiff can establish that decisions

concerning her compensation that were implemented after December 10, 2003, reflected gender-based discrimination.

C. Plaintiff's Non Wage-Based Gender Discrimination Claims Under Title VII and ORS §659A.030

Both Title VII and ORS § 659A.030 prohibit employers from terminating, refusing to promote, or otherwise discriminating against employees in the terms and conditions of their employment on the basis of gender.  42 U.S.C. § 2000e-2(a)(1); Or. Rev. Stat. § 659A.030(a)-(b).

1. Termination

Claims of gender-based discrimination are analyzed under the burden-shifting procedure set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[5]  Under this analysis, a plaintiff may establish a *prima facie* case of unlawful discrimination by showing that she is a member of a protected class, performed satisfactorily, was terminated, and the employer demonstrated a continued need for the same services and skills by seeking a replacement with similar qualifications.  E.g., Pejic v. Hughes

---

[5]Plaintiff's claims under Oregon statutes are subject to the same analysis under both state and federal law.  See, e.g., School Dist. No. 1 v. Nilsen, 271 Or. 461, 469, 534 P.2d 1135, 1139 (1975); Meltebeke v. Bureau of Labor and Indus., 120 Or. App. 273, 282 N. 4, 852 P.2d 859 (1993) (Edmonds, J., specially concurring), aff'd, 322 Or. 132, 903 P.2d 351 (1995); Hillesland v. Paccar, Inc., 80 Or. App. 286, 294, 722 P.2d 1239, rev. denied, 302 Or. 299, 728 P.2d 531 (1986).  Contrary to plaintiff's assertion that the "shifting burden" framework does not apply to claims brought under state law, the Ninth Circuit has held that, in evaluating motions for summary judgment brought against state-law claims in federal court, the evidence must be examined "in accordance with McDonnell Douglas' burden-shifting model."  Snead v. Metropolitan Prop. & Cas. Ins. Co., 237 F.3d 1080, 1093 (9th Cir., cert. denied, 534 U.S. 888 (2001)).

Helicopters, Inc., 840 F.2d 667, 672 (9th Cir. 1988) (citing

Sengupta v. Morrison-Knudsen Co., Inc., 804 F.2d 1072, 1075 (9th

Cir. 1986)).

Establishing a *prima facie* case creates a presumption of

unlawful discrimination, and shifts the burden to the defendant, who

must produce evidence that the adverse employment action was not

taken for impermissibly discriminatory reasons.  Texas Dep't of

Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If the

defendant produces such evidence, the presumption of unlawful

discrimination disappears, and the plaintiff must show by a

preponderance of the evidence that the defendant's proffered reason

for the adverse employment decision was merely a pretext for a

discriminatory motive.  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889

(9th Cir. 1994) (citing Lowe v. City of Monrovia, 775 F.2d 998, 1007

(9th Cir. 1985)).  To do so, the plaintiff must produce "specific,

substantial evidence of pretext."  Id. at 890 (quoting Steckl v.

Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983)).  Pretext may be

established either by showing that "a discriminatory reason more

likely motivated the employer or . . . that the employer's proffered

explanation is unworthy of credence."  Chuang v. University of

California Davis, 225 F.3d 1115, 1123 (9th Cir. 2000).  The

plaintiff always retains the ultimate burden of persuading the trier

of fact that the defendant intentionally discriminated for unlawful

reasons.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133,

142-43 (2000).

Defendant contends that plaintiff cannot make out a prima facie case of unlawful discharge under Title VII or ORS § 659A.030 because she cannot establish that she was performing her job satisfactorily when she was terminated.  Home Depot contends that plaintiff was fired because she failed to enforce its established safety standards, and that failure to enforce those standards constitutes unsatisfactory performance.  Home Depot notes that its written Code of Conduct provides for discipline, including termination, of supervisors who do not enforce its safety policies. Defendant further contends that, even if plaintiff could establish a prima facie case of unlawful discrimination, she has not produced "specific, substantial evidence" of pretext in response to its articulated non-discriminatory reasons for her termination.

There is no question that Home Depot had a written policy allowing for the termination of supervisors who did not enforce its safety policies.  Likewise, there is no question that plaintiff's failure to enforce Home Depot's safety policies was cited as a reason for her termination.  However, plaintiff has shown the existence from which a reasonable trier of fact could conclude both that plaintiff's performance was objectively satisfactory, notwithstanding her purported failure to enforce safety policies, and that plaintiff's failure to adequately enforce safety policies was not the real reason for her termination.  There is evidence supporting the conclusion that gender discrimination was a factor in plaintiff's termination.  Plaintiff's performance evaluations were satisfactory, and would have been more favorable if a supervisor who

worked closely with plaintiff had not been instructed to downgrade her evaluation.  In addition, the record includes the opinions of a supervisor and a co-worker that plaintiff was an exceptionally competent and productive employee.  Evidence that plaintiff was paid less than males performing the same or similar work at Home Depot supports an inference that plaintiff's termination may have been discriminatory.  There is evidence that, though Yamashita was ostensibly terminated for safety violations, his falsification of documents was the real cause for his termination.  There is evidence that Pierrat, who terminated plaintiff, had opined that, "as a woman," plaintiff could not supervise men on the freight team, and that Pierrat had said that he "would be getting rid of" plaintiff before she was terminated.  There is evidence that Pieratt was aware of safety violations before plaintiff was terminated, but did not enforce safety policies until plaintiff was terminated.  There is evidence that no male supervisors were ever terminated for "condoning" safety violations.  In addition, evidence that in October 2004, Pieratt moved Pulicella to the night freight supervisor position to perform the same work plaintiff performed could support an inference that Home Depot was preparing to terminate plaintiff before the safety violation incident that Home Depot cites as the reason for her termination.

From all this evidence, a trier of fact might reasonably conclude both that plaintiff's performance was objectively satisfactory, and that the proffered reason for plaintiff's termination was pretextual.  Home Depot's motion for summary

judgment on the termination component of plaintiff's Title VII and
Oregon statutory claim should be denied.


2. <u>Failure to promote</u>

Defendant Home Depot asserts that plaintiff has not
specifically pleaded a claim of discriminatory failure to promote,
but that it "appears that plaintiff has attempted to state a claim
for discriminatory failure-to-promote under Title VII and ORS
659A.030." I am satisfied that plaintiff's allegations are
sufficient to plead a claim for failure to promote under the "notice
pleading" requirements of the Federal Rules of Civil Procedure. In
paragraph 19 of her complaint, plaintiff explicitly alleges that
defendant retaliated against plaintiff by failing to promote her to
a night operations manager position. This is sufficient to state a
claim for failure to promote under Title VII and parallel state law.

In order to establish that denial of a promotion violated
Title VII and parallel state statutes, a plaintiff must first make
out a prima facie case showing that: 1) she belonged to a protected
class, 2) she applied for and was qualified for an available
position, 3) she was rejected, despite her qualifications, and
4) the position remained available and the employer continued to
consider applicants who had comparable qualifications. <u>E.g.</u>, <u>Lyons
v. England</u>, 307 F.3d 1092, 1112 (9th Cir. 2002) (<u>citing</u> <u>McDonnell
Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)). If a plaintiff
satisfies that burden, the burden-shifting analysis noted in the

discussion of plaintiff's wrongful termination claim above applies. See id.

Plaintiff's failure to promote claim is based upon Home Depot's refusal to assign plaintiff to a night operations Assistant Store Manager (ASM) position. Defendant contends that plaintiff cannot establish that she was qualified to work in an ASM position. It asserts that her contention that she applied for the ASM position in January, 2004, is "directly contradicted by Home Depot's business records." Home Depot further asserts that plaintiff herself admits that she did not have the necessary training when she first applied for the ASM position. Home Depot contends that the record establishes that ASM vacancies were either filled by more qualified candidates or "left vacant altogether." It further asserts that, even if plaintiff could make out a prima facie case of discriminatory failure to promote, she cannot establish that its proffered reasons for promoting other candidates or not filling the positions are false.

Plaintiff asserts that she applied for the night operations ASM position twice, first in January, 2004, and later in August, 2004. However, Home Depot's records refute plaintiff's assertion that she applied for an ASM position in January, 2004, and plaintiff has conceded that she was not qualified for the position at that time. The record also establishes that plaintiff had not completed the DST training required to qualify for an ASM position, and that plaintiff had not obtained the customer and merchandising experience required to qualify for the ASM position. The record further

establishes that, because of budgetary concerns, Home Depot did not fill the ASM position that plaintiff applied for in August, 2004.

Under these circumstances, plaintiff cannot establish that she was qualified for an ASM position or that Home Depot continued to seek to fill the position after plaintiff had applied. Accordingly, plaintiff cannot establish a *prima facie* discriminatory failure to promote claim, and Home Depot is entitled to summary judgment on the portion of plaintiff's Title VII and state law claims that is based upon Home Depot's allegedly discriminatory failure to promote plaintiff.

3. <u>Failure to Train</u>

In the general allegations that precede the enumeration of the claims in her complaint, plaintiff states she "received less training and thereby less promotional opportunity than similarly situated male associates." Though she did not specifically address training in her claims for relief, plaintiff addresses failure to train as a separate claim in her memorandum in opposition to the motion for summary judgment.

Home Depot contends that plaintiff did not plead a separate failure to train claim. This argument is well taken. The only reference to training in plaintiff's complaint alleges that plaintiff's receipt of "less training" afforded plaintiff "less promotional opportunity" than that available to similarly situated male associates. Plaintiff's allegations concerning training support her claim that she was unlawfully denied a promotion, and do

not state a distinct failure-to-train claim. Accordingly, I consider the training allegations as part of the failure to promote claim, and will not analyze training as a separate claim.[6]

4. Hostile Environment Claim

In order to establish a prima facie case of a gender-based hostile work environment under Title VII or parallel state law, a plaintiff must show that she was subjected to verbal or physical conduct because of her gender, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the terms of her employment. Manatt v. Bank of America, 339 F.3d 792, 798 (9th Cir. 2003). Discriminatory ridicule and insult can create a hostile work environment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). In order to be actionable, the conduct must be both objectively offensive, and the plaintiff must have subjectively considered it offensive as well. Id. at 22. In evaluating a hostile environment claim, the frequency and severity of the conduct, whether the conduct "is physically threatening or humiliating, or a mere offensive utterance," and whether the conduct "unreasonably interferes with the employee's work performance" must be considered. Clark County School Dist. v. Breeden, 532 U.S. 268, 270-71 (2001).

---

[6]Though plaintiff has not pleaded a separate failure to train claim, evidence concerning the training opportunities afforded plaintiff may be relevant to other claims, to the extent that it supports the conclusion that Home Depot generally discriminated against plaintiff on the basis of her gender.

Plaintiff's hostile environment case is based upon the conduct of Yamashita cited in the background section above.  This included a few incidents in which Yamashita rattled the door handle to the training room when she was expressing milk, made a comment about bringing in cereal for the milk, and made a few announcements on the PA system that employees should report to the training room while plaintiff was expressing milk, none of which resulted in another employee entering the room while plaintiff was present.

Home Depot contends that this conduct is not sufficiently extreme or pervasive to support a hostile environment claim, because it was not sufficient to alter the conditions of her employment.  It also asserts that, even if the conduct in question was sufficiently severe or pervasive to support a hostile environment claim, it is entitled to summary judgment under defenses noted in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998).  This "Ellerth/Faragher" defense may apply when an employee's supervisor has created a hostile work environment, but the supervisor's harassment has not resulted in a tangible adverse employment action such as termination, demotion, or reassignment to an undesirable position. See Ellerth, 524 U.S. at 765; Faragher, 524 U.S. 807.  Under these circumstances, an employer may assert an affirmative defense based upon the care it has taken to prevent and promptly correct any sexually harassing behavior, and upon a plaintiff's unreasonable failure to take advantage of preventative or corrective opportunities provided by the employer, or to otherwise avoid harm.

<u>Faragher</u>, 524 U.S. at 807-08.  An employer's "stated policy suitable to the employment circumstance" is a factor in analyzing the employer's responsibility to prevent and correct harassing behavior. <u>Faragher</u>, 524 U.S. at 808.

Plaintiff has not responded to any of Home Depot's arguments concerning the hostile environment component of her Title VII and state statutory claim.  Whether or not this reflects plaintiff's conclusion that she cannot prevail on this claim, I am satisfied that summary judgment is appropriate as to the "hostile environment" component of this action for two reasons.  First, though Yamashita's conduct was boorish and rude, it was simply not sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment and create a hostile work environment, as that term is interpreted in relevant decisions.  Second, even if the conduct in question could support a hostile environment claim, based upon the record before the court, a reasonable trier of fact could find only in Home Depot's favor on the affirmative Ellerth/Farager defense. The record establishes that Home Depot had an anti-harassment policy which provides employees with multiple avenues to present confidential complaints of harassment, and provides for investigation of allegations of harassment and for discipline of individuals who are found to have engaged in harassment.  The record further establishes that, though plaintiff was trained in this policy and was aware of its provisions, she did not report any of Yamashita's conduct to the appropriate managers as required under Home Depot's policies.  Though plaintiff testified that she told

Baird that she did not like the way Yamashita was running the freight team, she denied telling Baird that she had been subjected to sexually harassing comments or conduct.

Defendant's motion for summary judgment should be granted as to the hostile environment component of this action.

5. <u>Retaliation Claims Under Title VII and ORS 659A.030</u>

Plaintiff's retaliation claim under federal and state statutes alleges that Home Depot discriminated against plaintiff and terminated plaintiff because she opposed its practice of discriminating against her on the basis of her gender. To establish a prima facie case of retaliation under Title VII or parallel state law, a plaintiff must establish that 1) she engaged in protected activity; 2) her employer took adverse employment action against her; and 3) that a causal nexus exists between the alleged protected activity and the adverse employment action. <u>Stegall v. Citadel Broad. Co.</u>, 350 F.3d 1061, 1065-66 (9th Cir. 2003); <u>Harris v. Pameco Corp.</u>, 170 Or. App. 164, 176, 12 P.3d 524 (2000). To establish a retaliation claim, a plaintiff must establish by a preponderance of the evidence that an adverse employment action was motivated, at least in part, by her protected activity, and that, but for that activity, she would not have been subjected to that action. <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1064-65 (9th Cir. 2002). The employer's awareness that the plaintiff had engaged in protected activity is a required element in establishing a

retaliation claim.  Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796
(9th Cir. 1982).

Defendant concedes that plaintiff "may" satisfy the first two
of these requirements, because there is evidence in the record "to
suggest that she told Meno and Baird that she believed her gender
impacted her rate of pay."  It asserts, however, that she cannot
establish any causal link between her complaint about her pay and
her termination, because there is no evidence that plaintiff ever
complained about allegedly discriminatory compensation to Pieratt,
who made the decision to terminate her.  Defendant also asserts that
there is "undisputed" evidence that plaintiff was terminated
"following reports of egregious safety violations by associates on
the night freight crew."  Defendant adds that the record establishes
that plaintiff knew she could be held responsible under Home Depot's
policies for safety violations committed by her crew, and that "it
is uncontested that when confronted with evidence that an employee
on her freight team had committed multiple safety violations and was
being discharged, Plaintiff responded by telling Pieratt, the store
manager, that his decision was 'bullshit.'"

In her memorandum supporting her opposition to Home Depot's
motion for summary judgment, plaintiff has not responded to these
arguments or addressed the retaliation claim.  In evaluating the
motion as to this claim, however, I have considered plaintiff's
arguments concerning the common law wrongful discharge claim
discussed below: If plaintiff could show evidence supporting the
conclusion that Home Depot terminated her in part because of her

opposition to unlawful discrimination, that evidence would also support her retaliation claim under federal and state statutes.

As noted below, I conclude that, though the record before the court creates material issues of fact as to whether Home Depot discriminated against plaintiff on the basis of her gender, it does not include evidence supporting the conclusion that Home Depot retaliated against plaintiff in response to her opposition to discrimination. Though material issues of fact exist as to whether the safety issues that Home Depot cited as the basis for plaintiff's termination were pretextual, there is no evidence that Pieratt, who terminated plaintiff, was aware of any conduct by plaintiff undertaken in opposition to unlawful discrimination. In the absence of such evidence, Home Depot is entitled to summary judgment on plaintiff's claims of unlawful retaliation that are based upon state and federal statutes.

D. Plaintiff's Common Law Wrongful Termination Claim

In the absence of any contrary statutory or contractual provisions, Oregon law generally permits an employer to discharge an employee at any time and for any reason. Holien v. Sears, Roebuck & Co., 298 Or. 76, 83, 689 P.2d 1292 (1984). A narrow exception applies for those circumstances in which strict enforcement of this "at-will rule" would be contrary to public policy and no adequate statutory remedy is otherwise available. Carlson v. Crater Lake Lumber Co., 103 Or. App. 190, 796 P.2d 1216 (1990); Kofoid v. Woodard Hotels, Inc., 78 Or. App. 283, 287, 716 P.2d 771 (1986).

See also Draper v. Astoria School Dist. No. 1C, 995 F. Supp. 1122, 1131 (D. Or. 1998) (common law wrongful discharge claims not recognized in Oregon where adequate alternative remedy has been established by statute).  Terminating an employee because of her gender will not support a claim for wrongful termination under Oregon common law.  E.g., Kofoid, 78 Or. App. at 287.  Termination in response to an employee's opposition to unlawful discrimination will support such a claim.  See id.

Home Depot contends that plaintiff's common law wrongful termination claim fails because the record will not support the conclusion that any of its actions regarding plaintiff's discharge were wrongful.  It contends that this claim also fails because plaintiff cannot show that she was terminated in response to her resistance or opposition to unlawful discrimination.  Home Depot asserts that, though there is evidence that plaintiff may have complained to Baird and Meno about her allegedly disparate pay, there is no evidence that she ever "engaged in such oppositional conduct with Pieratt, who was the decision-maker responsible for her discharge."  Home Depot notes that Baird and Meno had both left the Troudale store where plaintiff worked sometime before Pieratt terminated her.

In support of her opposition to Home Depot's motion for summary judgment on the wrongful termination claim, plaintiff recites the allegations in her complaint.  She further cites Goodlette v. LTM, Inc., 128 Or. App. 62, 874 P.2d 1354 (1994), in

support of her contention that Home Depot's "motion to dismiss" her
wrongful discharge claim should be denied.

Plaintiff's reliance on her pleadings and upon Goodlette is
misplaced.  In reversing the trial court's grant of summary judgment
in the defendant employer's favor, the Goodlette court noted that
the employer had essentially asserted that it was entitled to
summary judgment because the plaintiff could not "state a claim" for
wrongful termination under the facts she had alleged.  Id. at 64.
Noting that the relevant question before it was "whether plaintiff's
complaint alleges that she was discharged for resisting
discrimination," the Goodlette court concluded that "the complaint
here succeeds in alleging resistance to discrimination."  Id. at 66.

Here, Home Depot correctly concedes that plaintiff's complaint
adequately states a wrongful termination claim.  Accordingly, the
question now is not, as in Goodlette, whether the complaint states a
wrongful termination claim, but whether plaintiff has shown the
existence of evidence from which a reasonable trier of fact could
find in her favor on that claim.

As noted above, plaintiff has shown the existence of
sufficient evidence that her termination was discriminatory to
defeat Home Depot's motion for summary judgment.  She has also
produced evidence that she complained to Baird and Meno about gender
discrimination.  However, she has not produced evidence that
Pieratt, the manager who decided to terminate her, was aware of any
of her conduct that opposed unlawful discrimination.  In the absence

of such evidence, Home Depot is entitled to summary judgment on the wrongful termination claim.

E. Claim for Back Pay

As noted above, plaintiff was terminated on November 11, 2004. When her deposition was taken, plaintiff testified that she had never obtained another job after she was terminated by Home Depot. She testified that she had decided to "stay home" with her children "after about a year . . . ." When asked if, after November, 2005, she had stopped looking for work in the newspaper, on line, and when she walked into a store, plaintiff replied: "Yes. Unless I walk into a store that I want to work at and because I know they have a night shift and they have a position open or something." In her declaration submitted in support of her opposition to the motion for summary judgment, plaintiff states that she looked for work nearly every day for a year, and then "decided to stay home and continue to seek out opportunities to work nights."

Home Depot contends that plaintiff's claim for back pay is barred "as of the date she withdrew from the job market" because a plaintiff seeking back-pay under Title VII and Or. Rev. Stat. § 659.A030 has a duty to mitigate damages by seeking comparable employment after being terminated. It asserts that plaintiff "admitted during her deposition that she withdrew from the job market within a year of leaving Home Depot in favor of remaining a stay-at-home-mom."

An employer bears the burden of establishing that a former employee has not made reasonable efforts to find employment following termination. E.g., Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995). To do so, the employer generally must show that substantially equivalent positions were available during the time in question, that the employee could have obtained an equivalent position, and that the employee failed to use reasonable diligence in seeking another job. Id. However, the employer need not prove that comparable positions were available if it can establish "that the employee made no reasonable efforts to seek such employment." Haeuser v. Department of Law, 368 F.3d 1091, 1100 (9th Cir. 2004).

Based upon plaintiff's deposition testimony, I conclude that summary judgment should be granted limiting the period of back pay that plaintiff might recover. Plaintiff's testimony that she stopped looking for work unless she walked into a store where she wanted to work which she knew had a night shift and "a position open or something" does not describe a job search that satisfied plaintiff's obligation to mitigate her damages. "Reasonable diligence" in searching for work requires a more active effort to find employment. Defendant therefore should not be required to pay plaintiff back pay for any period after November, 2005.

**CONCLUSION**

Defendant's motion for summary judgment (#52) should be GRANTED as to plaintiff's claims of retaliation and failure to promote under state and federal statutes, as to plaintiff's hostile environment claim, as to plaintiff's wrongful termination claim under Oregon common law, and as to any claim for back pay after November, 2005. The motion should be DENIED as to the balance of plaintiff's claims.

Plaintiff's motion to strike (#72) is GRANTED.

Defendant's motions to strike (#88 and #104) are GRANTED in part and DENIED in part as set out in Section I.B. above.

**SCHEDULING ORDER**

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due March 7, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 19th day of February, 2008.


/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge


FINDINGS AND RECOMMENDATION - 66